IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eric C.,[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

**Civ. No. 6:19-cv-01984-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Eric C. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to credit Plaintiff's subjective symptom testimony; (2) failing to credit the treating opinion of Dr. Sorin Petre; and (3) improperly crafting Plaintiff's residual functional capacity ("RFC"). Pl.'s Br. 5–17, ECF No. 14. Because there is substantial evidence in the record to support the ALJ's findings, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

Plaintiff applied for DIB on December 13, 2016, alleging disability since May 14, 2014. Tr. 61. His claim was denied initially and upon reconsideration. Tr. 81, 87. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Elizabeth Watson on November 2, 2018. Tr. 28–60. ALJ Watson denied Plaintiff's claim by a written decision dated December 21, 2018. Tr. 15–22. Plaintiff sought review from the Appeals Council and was denied on November 11, 2019, rendering the ALJ's decision final. Tr. 2. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 48 years old at the time of his alleged disability onset and 49 years old on June 30, 2015, the date last insured. *See* tr. 61. Plaintiff has a high school diploma. Tr. 41. Plaintiff has worked as a green chain puller, a relief utility worker, and a millwright. Tr. 41–44, 54. Plaintiff alleges disability due to cirrhosis, intermittent bleeding, hematochezia, intermittent abdominal pain, and intermittent nausea and vomiting. Tr. 62, 198.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, No. 19-35774, 2021 WL 609825, at *1, (9th Cir. Feb. 17, 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a

whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to identify specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony. An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms

alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of his symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040.

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of his conditions were not consistent with the medical and other evidence in the record. Tr. 19. The ALJ found that while Plaintiff experienced some pain and discomfort, the objective medical evidence did not support Plaintiff's alleged degree of limitation. Tr. 19. The ALJ noted that "[d]espite the claimant's gastrointestinal bleeding and discomfort, his medical records from 2014 indicate that he retained normal musculoskeletal and neurologic function. He reportedly ambulated with a normal gait." Tr. 19. The ALJ further noted that "[o]nly days after the date last insured, the claimant reportedly presented as 'well appearing' with normal gait and mobility." Tr. 19. The ALJ also found that Plaintiff's reports to treatment providers were inconsistent with his symptom testimony. Tr. 19. The ALJ noted that although Plaintiff "continued to endorse nausea, vomiting, and abdominal pain" in 2015, he "denied any abdominal tenderness and presented in no 'apparent distress'" within a clinical setting. Tr. 19.

Plaintiff testified that he could not work due to symptoms of cirrhosis, including intermittent bleeding, nausea, vomiting, and abdominal pain. Tr. 45–46. The objective medical evidence does not support the severity of Plaintiff's symptoms. An esophagogastroduodenoscopy ("EGD") and a colonoscopy were performed on April 30, 2014. Tr. 268. Findings were mostly normal, with the exception of "significant esophageal varices," and there was "no evidence of any bleeding." Tr. 268. A rectal exam revealed hemorrhoids. Tr. 268. Plaintiff saw treatment providers in March 2015 for intermittent pain in his right upper quadrant abdomen. Tr. 300. An ultrasound on April 1, 2015 also had mostly normal findings, other than gallstones. Tr. 302. The pancreas was "unremarkable," the gallbladder was "nondistended with normal wall thickness," and the right kidney was normal with no hydronephrosis or renal calculus. Tr. 302. Plaintiff

underwent another colonoscopy on July 2, 2015, just a few days after the date last insured. Tr. 317. Dr. Petre noted that while there were rectal varices, there was no bleeding. Tr. 322. He noted that hemorrhoids were "most likely the reason for intermittent rectal bleeding." Tr. 322. Despite Plaintiff's complaints of abdominal pain, his abdomen was routinely soft, flat, and nondistended with no masses. Tr. 328, 309, 318. Similarly, treatment providers repeatedly noted Plaintiff's normal gait and no abnormal movements, despite claims of debilitating pain. Tr. 318, 328.

As the ALJ noted, Plaintiff's symptom reports to his treatment providers do not support his testimony. Plaintiff saw treatment providers for rectal bleeding on April 23, 2014. Tr. 263. Plaintiff reported he was "not currently experiencing any pain" and had no history of chronic pain. Tr. 265. In April 2015, after a laproscopic cholectomy, Plaintiff reported "no significant pain." Tr. 309. In fact, Plaintiff's medical records suggest that some of Plaintiff's symptoms resolved during the relevant time period. Treatment notes show that by April 26, 2015 Plaintiff's stomach pain had resolved, though he continued to experience nausea and vomiting. Tr. 467. Treatment notes from September 1, 2015, just a few months after the relevant time period, show that Plaintiff's "nausea [was] controlled by medication… and he has done very well over the past." Tr. 461.

Plaintiff's testimony at the hearing was also inconsistent. Plaintiff testified that fatigue has changed his life completely and that he has to rely on his parents, family, and friends for everything. Tr. 48. In his function report, Plaintiff alleged that all he is able to do is nap, watch television, do a little laundry, and eat meals. Tr. 199. On good days, he is able to "walk a few feet to friends to say hi." Tr. 199. Plaintiff stated that he could only walk for ten minutes before

resting. Tr. 203. This degree of limitation is inconsistent with Plaintiff's testimony at his hearing, as well as with his treatment notes. Fatigue is only mentioned as a symptom or concern once in Plaintiff's treatment notes during the relevant time period. Tr. 528. At the hearing, the ALJ questioned Plaintiff more about how fatigue affects his life; Plaintiff did not answer. Tr. 48. Plaintiff testified that he reads a lot and has spent a lot of time studying cirrhosis and his conditions. Tr. 52. Plaintiff also testified that he has spent lots of time walking. Tr. 52.

As the ALJ noted, Plaintiff has "continued to struggle with alcohol cessation." Tr. 19. Plaintiff was a heavy drinker before April 30, 2014, when he was admitted to the hospital. Tr. 326. Plaintiff reported that he cut back on his drinking at that point and testified at the hearing that he no longer consumes alcohol. Tr. 53. Plaintiff's treatment providers repeatedly advised him to eliminate alcohol entirely. When Dr. Petre first saw Plaintiff in July 2014, he advised Plaintiff that alcohol in any amount will shorten his life. Tr. 328. Plaintiff's treatment providers encouraged him to seek alcohol abuse treatment in January 2015. Tr. 484. Plaintiff declined and refused AA brochures. Tr. 484. In December 2014, Plaintiff reported to his treatment provider that "he doesn't have rectal bleeding when he doesn't drink." Tr. 489. In treatment notes from February 2015, alcohol was also noted as a trigger for Plaintiff's abdominal pain. Tr. 481. Despite these side effects and doctors' recommendations, Plaintiff continued to consume alcohol during the relevant time period and beyond. *See, e.g.*, 313, 340, 341, 385, 389, 404, 436, 494, 623. With treatment providers, Plaintiff maintained that he only consumed a few drinks a week. *Id*. However, treatment notes also indicate that Plaintiff was consuming more alcohol than that. Plaintiff missed an appointment with Dr. Petre in December 2014; his father went in his place. Tr. 539. Plaintiff's father reported to Dr. Petre that "[Plaintiff] is in denial, he drinks." Tr. 539.

Plaintiff's father was concerned because Plaintiff "refuses any help, he refuses to go to the hospital, he refuses to take his medications." Tr. 539. His family reported to treatment providers in January and October 2015 that Plaintiff was drinking often and heavily. Tr. 485, 445, 450. While Plaintiff's alcoholism is a medical condition that has exasperated his symptoms, it is one that is treatable with the appropriate interventions. The ALJ may consider a failure to follow treatment recommendations in analyzing a claimant's symptom testimony.

Plaintiff has also declined to follow other medical advice and recommendations. Plaintiff testified that he "took [himself] off of six different prescriptions," citing the side effects. Tr. 48. This is supported by his treatment notes. Treatment providers noted that "[Plaintiff] is largely non complaint with his medications and [hypertension] management." Tr. 402. "[F]ail[ure] to follow prescribed treatment that might improve symptoms" may be evidence that the symptoms are not as severe as alleged. SSR 16-3p, 2017 WL 5180304.

In discrediting Plaintiff's subjective symptom testimony, the ALJ cited Plaintiff's medical records that did not support the alleged symptoms, as well as the specific inconsistencies between Plaintiff's hearing testimony and his symptom reports to treatment providers. The ALJ gave specific, clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's testimony.

## II. Medical Opinions

Plaintiff argues the ALJ failed to consider the opinion of Dr. Petre under the appropriate factors. Pl.'s Br. 6, 9. An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant

8 – OPINION AND ORDER

evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6). The ALJ's decision demonstrates that she considered the appropriate factors. The ALJ acknowledged the treating relationship, but also noted that Dr. Petre "likely had a limited opportunity to actually observe the claimant during the period under review" because he only saw Plaintiff once during that time. Tr. 20. The ALJ noted the inconsistencies between Dr. Petre's opinion and the medical records "indicating that the claimant retained significant physical function despite his gastrointestinal discomfort." Tr. 20. The ALJ also relied on Dr. Vu's testimony that "the evidentiary record offered little support for Dr. Petre's conclusions." Tr. 20. Plaintiff argues that the ALJ did not consider Dr. Petre's specialization. Pl.'s Br. 9. While the ALJ did not explicitly mention Dr. Petre's specialty as a gastroenterologist, the ALJ reviewed all of Plaintiff's medical records, including those from Dr. Petre. Dr. Petre performed several EGDs and colonoscopies on Plaintiff and treated Plaintiff for his gastrointestinal discomfort and bleeding. The ALJ was aware of Dr. Petre's specialization and considered it in her decision.

Plaintiff further argues that the ALJ failed to identify specific and legitimate reasons for discounting Dr. Petre's opinion. Pl.'s Br. 8–12. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* Dr. Petre's opinion

9 – OPINION AND ORDER

was contradicted by that of Dr. Vu. Tr. 20. Thus, the ALJ needed to provide specific and legitimate reasons for discrediting it.

Dr. Petre provided a treating source statement dated October 5, 2018. Tr. 585–89. He noted that he had treated Plaintiff since July 2, 2014 and saw him "roughly once a year." Tr. 585. Dr. Petre noted that Plaintiff's symptoms included "extreme fatigue (expectable in cirrhosis), abdominal pain, [and a] history of vomiting blood." Tr. 586. Dr. Petre opined that Plaintiff would need to rest for hours a day due to the fatigue from cirrhosis. Tr. 586. Dr. Petre opined Plaintiff can walk one city block, can sit for sixty minutes at a time, and can stand for thirty minutes at a time. Tr. 578. He further opined that Plaintiff could sit for six hours in an eight-hour workday and could stand or walk for one hour. Tr. 587. Dr. Petre opined Plaintiff would need hourly breaks of ten minutes each. Tr. 588. He opined that Plaintiff's medical conditions would never prevent him from being able to maintain a regular work schedule. Dr. Petre stated that Plaintiff's limitations have been present since he began treating him; however, Dr. Petre's statement does not focus solely on the relevant time period, but rather the entire treating relationship. Tr. 589.

The ALJ found that Dr. Petre's opinion was not supported by the objective medical evidence. Tr. 20. As discussed above, Plaintiff's medical records show that despite his pain and discomfort, "he retained normal musculoskeletal and neurologic function." Tr. 20. He had normal gait and no abnormal movements. Tr. 318, 328. Plaintiff's own testimony that he has spent a lot of time walking also contradicts the extreme limitations in Dr. Petre's opinion. Tr. 52.

As the ALJ also noted, Dr. Petre saw Plaintiff only one time during the relevant period. Tr. 20. Dr. Petre first saw Plaintiff on July 2, 2014. Tr. 326. Because Plaintiff failed to appear at the scheduled appointment in December 2014, the next time Dr. Petre saw him was July 2, 2015,

just a few days after the date last insured. Tr. 317, 539. Dr. Petre continued to treat Plaintiff for several years. It was not until after the date last insured that Dr. Petre noted Plaintiff's history of bleeding esophageal varices. Tr. 388. Dr. Petre performed two EGDs in March and April 2016 during which he placed bands and flattened varices. Tr. 388. Dr. Petre's treatment notes do not mention Plaintiff's complaints of fatigue. As time went on, Dr. Petre's treatment became more involved, suggesting that Plaintiff's conditions worsened. Dr. Petre's opinion was focused on the entire time he has treated Plaintiff and likely reflected Plaintiff's current limitations.

Dr. Vu, on the other hand, focused on the objective medical evidence from May 14, 2014, Plaintiff's alleged disability onset date, to June 30, 2015, the date Plaintiff was last insured. Dr. Vu testified that there was no support for Dr. Petre's limitations, based on the objective medical evidence from the relevant time period. Tr. 36–37. He noted that Plaintiff suffered from chronic liver disease. Tr. 33. He noted that Plaintiff's endoscopy showed esophageal varices but no bleeding. Tr. 33–34. He testified that Plaintiff's hemorrhoids were likely the cause of the rectal bleeding. Tr. 39. He noted that there was no evidence that Plaintiff's medications cause side effects. Tr. 40. Dr. Vu opined that, due to his conditions, Plaintiff would need some restrictions in a work setting. Tr. 34. He opined that Plaintiff should be restricted to light work. Tr. 35. He opined that Plaintiff could occasionally lift up to twenty pounds and could frequently lift up to ten pounds. Tr. 35. He further opined that Plaintiff could stand or walk up to six hours and could sit indefinitely. Tr. 35. He also recommended that Plaintiff be excluded from climbing ladders and scaffolds, and that he be restricted from unprotected heights and moving equipment. Tr. 35.

The ALJ found Dr. Vu's opinion "consistent with the relevant medical evidence" and granted it significant weight. Tr. 20. In determining a claimant's RFC, the ALJ is responsible for

resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The ALJ accounted for the limitations described by Dr. Vu in the RFC. Tr. 18.

In discounting Dr. Petre's opinion, the ALJ considered the appropriate factors and gave specific and legitimate reasons, supported by substantial evidence. Because the ALJ did not err in discrediting Plaintiff's testimony or Dr. Petre's medical opinion, the Court finds that the ALJ's RFC finding is supported by substantial evidence in the record.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 31st day of March, 2021.

                                                s/ Michael J. McShane
                                                Michael J. McShane
                                                United States District Judge